IN RE ESTATE OF OSCAR SAMSON.
EMMA B. SAMSON, APPELLEE, V. A. L. NEUMANN, EXECUTOR, ET AL., APPELLANTS.
7 N. W. (2d) 60

FILED DECEMBER 18, 1942. No. 31536.

*John L. Barber, Jr.,* and *Chatt & Ellenberger,* for appellants.

*Carroll O. Stauffer* and *McKenzie & Dugan, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

A claim for a widow's allowance was denied by the probate court. Widow appealed to district court and died while appeal was pending there. The executor of her estate had the district court enter a conditional order of revivor, to which a plea in abatement was filed objecting to such order. The district court overruled the plea in abatement and revived the cause of action in the name of Carroll O. Stauffer, executor of the estate of Emma B. Samson, deceased, from which order the executor and heirs of the husband's estate appeal.

An examination of the transcript discloses the following pleadings, which may be epitomized briefly before a discussion of the legal points involved.

On October 11, 1940, Mrs. Emma B. Samson filed a petition in the county court of Burt county for a widow's allowance of $125 a month for her support and maintenance pending the administration of the estate of her husband, Oscar Samson, deceased, alleging that she is 73 years of age, an invalid, unable to care for and support herself, and is obliged to employ help to assist her in her housework and also personal care for herself; that the value of said estate is between $175,000 and $200,000, and the debts of the estate will not exceed $1,000.

On October 28, 1940, A. L. Neumann, executor of the estate of Oscar Samson, deceased, filed in the county court objection to widow's allowance, for the reason that she owns Nebraska real estate and has an income therefrom, as well as title to sufficient personal property, for her maintenance during the probating of the estate; that on August 12, 1927, Oscar Samson and Emma B. Samson entered into a postnuptial agreement, whereby she released and quitclaimed to the heirs of Oscar Samson all her right, title, interest, dower, claim or demand in or to the property of Os-

car Samson, and is therefore barred from any widow's statutory allowance during the probate of the estate. Attached to said objection as exhibit A was the postnuptial agreement, in which each party waived all right, title and interest in the real or personal property of the other, the agreement reciting that Oscar Samson had bequeathed and devised to his wife the sum of $32,500 and certain real estate in the city of Oakland in his last will and testament.

On February 20, 1941, Emma B. Samson filed a second petition for widow's allowance, asking for the sum of $600 a month for her support and maintenance pending the administration of the estate.

On May 7, 1941, A. L. Neumann, executor, filed amended objections to application for widow's allowance, alleging that the deceased and the petitioner were married in 1911, the marriage being the third for the deceased and the second for petitioner, and both parties had children by their former marriages; that Oscar Samson died August 27, 1940, at the age of 91 years; that on August 12, 1927, the parties entered into a postnuptial agreement, to which petitioner never made any objection or complaint during the lifetime of the deceased, and she is now estopped to question or attack said agreement, and is barred by reason of laches and delay from attacking the nuptial agreement.

On May 7, 1941, reply was filed in the county court to the answers and amended objections of the executor, admitting that Samson induced his wife to sign the postnuptial agreement under the representations that he owned property not worth over $140,000, that the provision he was making for claimant was of greater value than one-fourth of his entire estate, that he was making such provision for claimant to facilitate the settlement of his estate in the event of his death before that of claimant, and for the purpose of assuring her that she would receive a just share of his estate; that she later learned that said representations were untrue and were made for the purpose of cheating and defrauding her, and that he was worth the sum of $300,000, and that the agreement was not drawn

for the purpose of facilitating the settlement of his estate, but for the purpose of leaving to his children a large part of his estate which in justice and right belonged to claimant as his wife.

Arguments were made to the acting county judge, and on May 7, 1941, it was ordered that the application for widow's allowance be denied and disallowed. The widow appealed to the district court. On August 3, 1941, the widow died, and her executor was substituted as claimant and permitted to proceed with the claim as ordered by the district court.

On November 21, 1941, A. L. Neumann, executor of the estate of Oscar Samson, deceased, filed plea in abatement, alleging that the claimed right to a widow's allowance had fully and completely abated and become extinguished by reason of the death of said Emma B. Samson, and objecting to any order or revivor and to the further continuance of this case in any respect whatsoever, and praying that the application for revivor be denied.

After a hearing on said matter on January 10, 1942, the plea in abatement was overruled, and the cause of action was revived in the name of the executor of the widow's estate. Motion for a new trial being overruled, A. L. Neumann, executor of the estate of Oscar Samson, and five heirs appealed.

The decision of the trial court appears to be based upon our statute, section 20-1402, Comp. St. 1929, reading: "No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, assault, or assault and battery for a nuisance, or against a justice of the peace for misconduct in office; which shall abate by the death of the defendant."

It is argued that, an action for a widow's allowance not being named therein, therefore it does not abate, and we are cited to the case of *Cleland v. Anderson,* 66 Neb. 252, 92 N. W. 306, 5 L. R. A. n. s. 136, which was an action to recover damages because of an unlawful conspiracy of the

defendants whereby the plaintiff had been driven out of the lumber business and forced into bankruptcy, and in discussing the force and effect of said section 20-1402, Comp. St. 1929, Commissioner Pound said:

"As the statute is construed by the court, no action will abate by reason of the death of the plaintiff, whatever the nature of the cause of action upon which it is based, except such as are expressly named. Under that section, therefore, whatever might have been the rule had not an action been pending, it must be held that the interest of the bankrupt in the action brought by him against Iddings, Birge and Field would have passed to his personal representative upon his death, and in consequence was assignable."

In several states, decisions are found supporting the trial court in the case at bar.

"Under statute giving widow $500 from estate of husband in preference to all unsecured claims and without regard to widow's other rights under will or intestacy laws, right to payment vests in widow on death of husband, and survives to widow's administrator, where widow dies before payment is made (Act Gen. Assem. April 6, 1933, 38 Del. Laws, c. 185)." *In re Hearn's Estate* (1937) 22 Del. Ch. 447, 195 Atl. 367.

The Missouri courts have held in several cases that, where a widow died pending appeal to the circuit court without having received allowance which was made to her by the probate court, the action may be revived in the name of her administrator. It is said that many opinions are found adverse to this, but that, as the Missouri court has held this way on several occasions, such opinions from other courts are not binding upon them. *Williams v. Schneider*, 1 S. W. (2d) (Mo. App.) 230.

This case has involved considerable research to ascertain what course should be adopted hereafter in Nebraska. In the first place, all statutes *in pari materia* should be studied together and, in addition to section 20-1402, heretofore set out, section 20-1405, Comp. St. 1929, reads:

"Where one of the parties to an action dies, or his powers as a personal representative cease, before the judgment, if the right of action survive in favor of or against his representatives or successor, the action may be revived, and proceed in their names." And section 20-1410, Comp. St. 1929, reads: "Upon the death of the plaintiff in an action, it may be revived in the names of his representatives, to whom his right has passed. Where his right has passed to his personal representatives, the revivor shall be in his name; where it has passed to his heirs or devisees, who could support the action if brought anew, the revivor may be in their names."

Section 20-322, Comp. St. 1929, states: "An action does not abate by the death, or other disability of a party, or by the transfer of any interest therein during its pendency, *if the cause of action survive or continue.*"

These sections require an investigation as to when causes of action survive, and there is a distinction between the use of the word "abatement" in common law, where it means an entire overthrow or destruction of a suit, and in equity courts, where abatement may indicate rather a temporary suspension of further proceedings in the suit because of want of proper parties.

"The question for determination is whether this action survives the death of the plaintiff. The well known common-law rule, *actio personalis moritur cum persona,* is invoked by the respondents, which presents two questions for our determination: First, was the claim asserted by plaintiff personal in its nature; and, second, if it was personal did it survive the death of the plaintiff?

"As to the first question, we are clearly of the opinion that the right to support was purely personal. From the very nature of the right it could be nothing more. It was a right which she alone could enjoy. Its duration depended upon her survival. There can be no support for a non-existing person. This brings us to the question: Did the right of action survive, pursuant to section 8561, N. C. L., which provides: 'An action shall not abate by the death

\* \* \* of a party \* \* \* if the cause of action survive or continue \* \* \*'?" *Foy v. Smith's Estate,* 58 Nev. 371, 81 Pac. (2d) 1065. In this action to set aside a divorce, the plaintiff appealed from an adverse decision and died pending appeal, and the court held: "All that she was entitled to \* \* \* was support. She got that during her life. When she died, her claim upon the defendant and his estate died also."

A case exactly in point came before the North Carolina court nearly a century ago, and has been followed in many other states. In that case it is said: "After the interlocutory order had been made on her petition, appointing commissioners to allot to her a year's allowance, she died before the allotment was made by them. We think that her administrator had no right to revive and prosecute the said petition. The Legislature certainly did not intend that the year's allowance out of the stock, crop, and provisions of the intestate's husband should be assets for any purpose, in the hands of *her* administrator. \* \* \* But, it seems to us, that, if she be dead, before the commissioners make the allotment, the necessity for it would of course cease, as her house and her table only, whilst she was alive, were intended by the Legislature to be supported for one year, out of the assets of her husband. She, alone, can sue for the allotment. The children are not authorized to sue for any allotment. They were not intended to participate in the allotment in any other way, than as members of the widow's family while she was alive. The children, therefore, must stand upon the same footing as the infant children of an intestate father, who leaves no widow; in which case the children certainly have no year's allowance. It seems to us that the petition and proceedings under it were abated by the death of the widow before a final judgment was rendered." *Cox v. Brown,* 5 Ired. Law (N. Car.) 194.

This case of 1844 was followed in 1869 in a decision holding: "When a widow files a petition for a year's provisions, under the statute, and dies before any allotment is made, the administrator has no right to revive the petition, but it is abated." *Ex parte Dunn,* 63 N. Car. 137.

In a later case it was said: "So if the widow dies before the allotment is made, her right ceases, and neither her administrator nor her children succeed to it. * * * Nor if she die after allotment and before confirmation, does the right survive." *Simpson v. Cureton*, 97 N. Car. 112, 2 S. E. 668.

The New Jersey court said: "In the present case, before the decedent's will was proved and before an inventory, appraisement and selection could be made, the widow, who constituted the family, died. I do not think the right she took at the death of her husband survived to her representatives." *Carey v. Monroe*, 54 N. J. Eq. 632, 35 Atl. 456.

In an election case in Illinois, the court said: "It has frequently been held in this state and elsewhere that a cause of action created by statute does not survive unless declared so to do by the statute itself or by provisions for its survival made by some other statute. * * * Statutes in derogation of the common law are to be construed strictly. The so-called abatement statute, which may be more properly denominated a survival statute, abolishes the common-law rule of abatement in those proceedings included within its scope. The act is therefore a change or limitation of the common-law rule and provides for survival of actions of the character and under the circumstances therein described. It is not contended that the primary act or any other statute of the state provides for survival of a contest proceeding." *People v. Taylor*, 342 Ill. 88, 174 N. E. 59.

"But in some states it is held that, if the widow die before it is allotted to her, her right thereto abates, and it cannot be claimed by her administrator. 'This allowance for necessaries,' say the commissioners revising the statutes of Massachusetts, 'is not intended to compensate the widow for any apparent injustice to which she may, in any case, be exposed by the statute rules of distribution, or by the will of her husband; but merely to furnish her with a reasonable maintenance for a few weeks, and with some articles of necessary furniture, when she is not otherwise provided with them.' It was held, in accordance with this view, that the death of the widow pending an appeal by the

executors from an allowance made to her by the court of probate put an end to her claim." Woerner, American Law of Administration (3d ed.) 259, sec. 86.

"In California it is held that allowance to the widow terminates *ipso facto* if she remarries, the theory being that she is entitled to allowance only as a member of the family of the deceased. It seems, however, that the court may continue the allowance of the children notwithstanding remarriage of their mother. Death of the widow, it seems, also terminates any right to subsequent allowance, but the right to moneys accrued and unpaid or on hand passes to her heirs or representatives." 2 Bancroft, Probate Practice, 1311, sec. 731. See, also, *Estate of Treat*, 162 Cal. 250, 121 Pac. 1003; *Estate of Hamilton*, 66 Cal. 576, 6 Pac. 493; *In re Still*, 117 Cal. 509, 49 Pac. 463; *In re Lux*, 114 Cal. 73, 45 Pac. 1023.

In *Adams v. Adams*, 10 Met. (Mass.) 170, at the 1845 term, the learned Chief Justice Shaw, who delivered the opinion of the court, says: "On the whole, though there may have been some fluctuating views on the subject, we are of opinion, that this provision is intended for the present relief of the widow, for the maintenance of herself and children; that it is temporary in its nature and personal in its character, and confers no absolute or contingent right of property, which can survive her, or go to her personal representative. Upon no other ground could this provision be rescued from the imputation of injustice; as it would in many cases operate to take property, even from creditors already suffering from the insolvency of their debtor—a class always most highly favored." This is approved in *Kingman v. Kingman*, 31 N. H. 182.

The case of *Drew v. Gordon*, 13 Allen (Mass.) 120, followed the case of *Adams v. Adams, supra*, holding that the widow having failed to select, from her deceased husband's personal estate, the allowance up to $200 made her by the probate court, the same could not be claimed by her personal representative after her death. The statute involved in these cases contained this provision: "Such parts of the

personal estate of a person deceased as the probate court, having regard to all the circumstances of the case, may allow as necessaries to his widow, for herself and family under her care." Gen. St. Mass. 1860, ch. 96, sec. 5.

In Cleveland a policeman brought action to set aside his resignation, obtained by threats, and then died. The widow asked that the action be revived. It was held that the action did not survive his death, and many pertinent questions are examined, and the section of the Ohio statute is set out and discussed. *State v. City of Cleveland,* 133 Ohio St. 423, 14 N. E. (2d) 351.

Other decisions which shed light upon the propositions involved, but cannot be discussed because of the length of this opinion, are: *State v. City of Shawnee,* 167 Okla. 582, 31 Pac. (2d) 552, 92 A. L. R. 948, with annotations; *Tarbox v. Fisher,* 50 Me. 236, holding that the widow's death abates her allowance if no final decree had been entered; *Spring v. Webb,* 227 Fed. 481; *Havill v. Havill,* 332 Ill. 11, 163 N. E. 428; *Succession of Tugwell,* 43 La. Ann. 879, 9 So. 499.

In Nebraska we have *Smith v. Estate of Bayer,* in which case two opinions, upon different phases of the litigation, were released on the same day, one written by Reese, C. J., the other by Barnes, J., and found in 95 Neb. 488, 145 N. W. 1030, and 95 Neb. 532, 145 N. W. 1029, which opinions have been rarely, if ever, cited. In Judge Barnes' opinion we find that a widow waited a year before making application for an allowance, and died while an appeal was pending from its disallowance by the county court. It is said that, as she waited about a year after the death of her husband, her application was denied by the probate court, and she died before she took any steps to appeal from such order, so that her administrator succeeded to no right that he could enforce.

Appellee insists that this case lends no aid to the solution of the question before the court in the instant case, for sufficient facts were not disclosed. However, by gleaning the facts as set out in both of the opinions, we believe the case is in point.

"It is fundamental that when a party to a pending suit dies and the cause of action in such suit is one that dies with the person, the suit abates and cannot be revived. The personal representatives of a deceased party to a suit cannot prosecute or defend the suit after his death unless the cause of action on account of which the suit was brought is one that survives by law." 1 Am. Jur. 105, sec. 159.

The statutes provide for an allowance to a widow, but under the common law this right did not survive, and no provision is found in any statute in Nebraska authorizing any such allowance to her heirs or executor upon her death. The law does not provide for her heirs or representative as against the estate of her husband after her death.

The conclusion is inevitable that the cause of action did not survive her death, and hence there is nothing to revive, and section 20-1402, Comp. St. 1929, has no application. The judgment of the trial court is reversed and the action dismissed.

REVERSED AND DISMISSED.