IN RE ESTATE OF ROSE ELIZABETH JACOBSON, DECEASED. J. HERBERT JACOBSON, APPELLANT, V. ROSALIE NEMESIO, PERSONAL REPRESENTATIVE OF THE ESTATE OF ROSE ELIZABETH JACOBSON, DECEASED, APPELLEE.

281 N. W. 2d 552

Filed July 24, 1979. No. 42321.

Norris G. Leamer and Kurt T. Rager, for appellant.

Smith, Smith & Boyd, for appellee.

Heard before KRIVOSHA, C. J., CLINTON, WHITE, and HASTINGS, JJ., and MURPHY, District Judge.

KRIVOSHA, C. J.

This is an appeal from the District Court for Dakota County, Nebraska, dismissing objections filed by appellant, J. Herbert Jacobson, the surviving spouse of the deceased, Rose Elizabeth Jacobson. We have reviewed the record in this case, and affirm the judgment of the trial court.

Rose Brauckman Jacobson and J. H. Jacobson were married on June 10, 1950. It was apparently a second marriage for the parties and therefore, on June 9, 1950, the parties executed an antenuptial agreement. Under the terms of the antenuptial agreement, it was provided that the property of each of the parties owned as of the date of the marriage shall continue to be their own respective property, and all other property acquired or accumulated after the date of the marriage shall be held in joint and equal ownership and upon the death of either, the one remaining shall have an undivided 50 percent interest in the property of the other acquired after the date of the marriage.

Apparently the parties recognized that certain of their property might lose its identity over the years, and therefore they provided in paragraph 3 of the antenuptial agreement: "In the event the identity of the property held by the parties as of this date, shall in the future become confused or lost because

of a succession of conveyances, transfers and acquisitions of property, then there shall be set aside to the Bride and Bridegroom respectively, property from the joint holdings sufficient to make up for the value of the property whose identity has been lost." The antenuptial agreement then provided that in the event of the wife's death, the property having become confused or commingled, her estate shall receive $6,400 from the joint assets of the parties. In the event of the bridegroom's death, his estate shall receive $4,500 from the joint assets.

Subsequent to the marriage ceremony, Rose Elizabeth Jacobson executed a last will and testament wherein she acknowledged the antenuptial agreement and incorporated the agreement as part of her last will and testament. She then provided that upon her death the $6,400, which would come to her from the joint property of the parties, pursuant to the antenuptial agreement, should be devised to her sister, Rosalie Nemesio. She devised and bequeathed 50 percent of the remainder of her estate to her husband with the balance of the estate being devised and bequeathed to specific individuals, including her sister, Rosalie Nemesio.

Rose Elizabeth Jacobson died on October 20, 1976. On January 17, 1977, appellant, the surviving spouse, filed the will and later the antenuptial agreement in the county court of Dakota County, Nebraska. Both the will and antenuptial agreement were admitted to formal probate by order of the county court on February 16, 1977, without objection. The first publication and notice to creditors was on February 24, 1977. On September 26, 1977, appellant filed what was entitled "Application and Election," purporting to waive his rights under the will and seeking to take against the will pursuant to the statutes of the State of Nebraska. By the document, he sought certain personal property, wearing apparel, homestead exemption, and widow's allowance. Appellant died

on October 19, 1978, after appeal had been perfected to this court.

The first issue which we need to address is whether the application filed by the appellant requesting that he be allowed all the wearing apparel, ornaments, and household furniture of the deceased, and the request for the granting of a temporary allowance, survives his death so as to be before this court subsequent to his death. We believe the law in that regard is clear, and the rights in question, being personal to the surviving spouse, terminated upon his death as did the cause of action. Appellant's right to the personal property, the widow's allowance, and the wearing apparel, as well as the homestead exemption, are all provided by statute and are personal in nature. We have found no statute, nor are we cited to any statutory provision, declaring that these rights, personal in nature, survive the death of the surviving spouse. It is fundamental that when a party to a pending suit dies and the right is personal in nature, the right dies with the person. The personal representatives of a deceased party to a suit cannot prosecute or defend a suit after his death unless the cause of action on which the suit was brought is one that survives by law. In re Estate of Sampson, 142 Neb. 556, 7 N. W. 2d 60; § 30-2315, R. R. S. 1943. We therefore need not further discuss appellant's request for granting of these rights in view of his subsequent death.

The second issue which requires our attention is whether or not appellant's election to waive his rights under the will and take by statute was timely made. We believe it was not. Appellant maintains that because his wife died prior to the effective date of the Nebraska Probate Code, January 1, 1977, the previous probate code applies. The Nebraska Probate Code, however, anticipated this very situation and made provision therefor.

Section 30-2901 (b) (2), R. R. S. 1943, provides as

follows: "[T]he code applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this code." That provision makes it clear the estate, not having been filed for probate until after the effective date of the Nebraska Probate Code, is governed by the provisions of the Nebraska Probate Code. To determine if the election was timely we must look at the Nebraska Probate Code.

Section 30-2317, R. R. S. 1943, provides, in part: "The surviving spouse may elect to take his elective share in the augmented estate by filing in the court and mailing or delivering to the personal representative, if any, a petition for the elective share *within six months after* the first publication of notice to creditors for filing claims which arose before the death of the decedent, *or within one year after the date of death*, whichever time limitation *first expires.* * * *." (Emphasis supplied.) It is clear in this case that the 6-month period first expired, and that an attempt by appellant on September 26, 1977, to elect to take his elective share, came too late.

Appellant argues, however, that the provisions of section 30-2901 (b) (4), R. R. S. 1943, provide him with additional time. Section 30-2901 (b) (4), R. R. S. 1943, provides as follows: "[A]n act done before the operative date in any proceeding and any accrued right is not impaired by this code. If a right is acquired, extinguished or barred upon the expiration of a prescribed period of time which has *commenced to run* by the provisions of any statute before the operative date, the provisions shall remain in force with respect to that right." (Emphasis supplied.) Apparently it is appellant's contention that the provisions of the former probate code granted

him a right which started to run prior to the effective date of the Nebraska Probate Code since his wife died prior to January 1, 1977. It is therefore claimed that appellant is entitled to 1 year in which to make an election, pursuant to the provisions of former section 30-108, R. R. S. 1943.

The difficulty with that argument is that the former section 30-108, R. R. S. 1943, did not grant to appellant a right prior to January 1, 1977. Under the provisions of former section 30-108, R. R. S. 1943, the surviving spouse had 1 year "after the issuance of letters testamentary" in which to make the election. The record in this case, however, discloses that the letters testamentary were not filed until after January 1, 1977. Therefore, the appellant's right had not "commenced to run by the provisions of any statute before the operative date," and therefore could not be applicable. Having failed to make his election within the 6-month period required by the Nebraska Probate Code, the election is ineffective.

We are left with the final issue as to whether or not the identity of certain property owned by the deceased wife at 1507 Pierce Street, Sioux City, Iowa, had so lost its identity and the property of the parties had become so confused because of succession of conveyances as to bring into play paragraph 3 of the antenuptial agreement. We have examined the record in this case and believe the best that can be said is that the identity of the property owned at the time of the death of the deceased wife was indeed confused and the identity of property owned by either party immediately prior to their marriage had become so commingled as to no longer be identifiable.

In any event, it makes little difference if we determine, as apparently urged by appellant, that he in fact had substantially purchased the property at 114 East 37th Street, South Sioux City, Nebraska, from his own proceeds and not from the proceeds of the

property at 1507 Pierce Street, Sioux City, Iowa. We would then be left with the situation wherein we could no longer identify what happened to the proceeds from the sale of the property owned by Mrs. Jacobson in Sioux City, Iowa, and again would be required to apply paragraph 3 of the antenuptial agreement. We believe the evidence justifies a finding that the identity of the property had become confused and the origins of the same lost. We further find the provisions of the will of Rose Elizabeth Jacobson, when read together with the provisions of the antenuptial agreement, should be carried out. The order of the trial court did in fact direct that the provisions of the will be fulfilled, and we find the order was in all respects correct. The judgment is affirmed.

AFFIRMED.