ESTATE OF PAUL J. MOSS, DECEASED, BY JULIE ANN STUEVEN, SPECIAL ADMINISTRATRIX AND EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Moss v. Commissioner
Docket No. 4429-80.
United States Tax Court
T.C. Memo 1982-85; 1982 Tax Ct. Memo LEXIS 662; 43 T.C.M. (CCH) 582; T.C.M. (RIA) 82085; February 18, 1982. Truman Clare and Steven M. Watson, for the petitioner. Robert L. Archambault, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in Federal estate tax for the estate of Paul J. Moss, deceased, Julie Ann Stueven, special administratrix, in the amount of $ 42,849.42. The issues for decision are as follows: (1) the amount of the marital deduction to which the estate is entitled, (2) whether deductions claimed by the estate relating to services rendered by an attorney and an accountant are overstated to the extent of $ 1,440, (3) whether decedent's gift of an undivided one-fourth interest in his farm on April 28, 1976, was made in contemplation of death, and (4) the fair market value of that portion of the farm which is includable in decedent's *664 gross estate as of June 24, 1976, the date of decedent's death. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Julie Ann Stueven, special administratrix of the estate of Paul J. Moss, filed a Federal estate tax return with the Internal Revenue Service Center, Ogden, Utah, dated March 17, 1977. At the time the petition was filed in this case, Julie Ann Stueven (Mrs. Stueven) resided in Grand Island, Nebraska. The decedent, Paul J. Moss (Mr. Moss), died testate on June 24, 1976. At the time of his death, decedent was a resident of Hall County, Nebraska. Decedent was survived by his widow, Roma Moss (Mrs. Moss), and Mrs. Stueven, decedent's daughter and Mrs. Moss' stepdaughter. Mr. Moss had previously been twice married and twice divorced from Mrs. Moss. Prior to entering into their third marriage, Mr. and Mrs. Moss executed an ante-nuptial agreement, dated July 2, 1965, which contained the following pertinent provisions: NOW IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES AS FOLLOWS: That they each declare their intention to marry the other, and during their marriage each of them shall be and completely independent of the other as *665 regards the enjoyment and disposal of all property now owned by each of them and each hereby agrees with the other, in view of said proposed marriage, that all property belonging to first party at the commencement of said marriage shall be the property of first party and all property belonging to second party at the time of marriage shall be the property of the second party, so that the other, in any event, shall have no interest therein, it being specifically the intention of the parties that all of the property owned by second party at the time of said marriage shall be her separate property and shall be disposed of by her separately, and all property owned by first party at the time of said marriage shall be his separate property and shall be disposed of by him separately. IT IS UNDERSTOOD AND AGREED that each party hereto does hereby waive their rights of inheritance or statutory interest they may have by operation of law in and to such estate of the other as was owned by the other at the time of their said marriage. Prior to his third marriage to Mrs. Moss, Mr. Moss owned real property (the farm) which is described as follows: Southwest Quarter of Section Twenty-eight (28), *666 Township Eleven (11) North, Range Ten (10) West of the 6th P.M., Hall County, Nebraska
On April 28, 1976, Mr. and Mrs. Moss joined in executing a warranty deed which conveyed an undivided one-fourth interest in the farm to Mrs. Stueven. Mr Moss reported the gift in a Federal gift tax return dated May 7, 1976. The return valued the one-fourth interest in the farm as of April 28, 1976, at $ 55,735. On May 19, 1976, Mrs. Moss filed a petition for divorce in a Nebraska State Court seeking a dissolution of her third marriage to Mr. Moss. On June 3, 1976, Mr. Moss executed a will which left all of his property to Mrs. Stueven. The will stated that Mr. Moss was not providing anything for Mrs. Moss because she had left him and was filing a separation action. The will also mentioned that Mr. and Mrs. Moss had previously entered into an ante-nuptial agreement. Prior to his death, Mr. Moss had suffered from very poor health. In 1972, he underwent an operation in which a resectioning of his lower colon was required because he was found to have cancer of the colon. After the operation, Mr. Moss continued to suffer from emphysema, severe rheumatoid arthritis, and circulation problems. *667 For a number of years prior to his death, Mr. Moss had not been able to work because of his poor health. On April 15, 1976, Mr. Moss' younger brother died from a heart attack. His brother's death had a severely depressing effect on Mr. Moss. Mr. Moss died on June 24, 1976. Shortly thereafter his June 3, 1976, will was filed for probate in a Nebraska State Court. Mrs. Moss asserted that as decedent's widow she was entitled to a statutory one-fourth share in decedent's estate under Nebraska law. See Reissue Revised Statutes of Nebraska 1943, sections 30-107 and 30-101. [1] Mrs. Moss also petitioned the Nebraska State Court for an allowance for her support during the administration of the estate. On October 4, 1976, the Nebraska State Court entered an "Order Allowing Widow to take Inheritance by Statute" which held as follows: IT IS ORDERED, *668 ADJUDGED, AND DECREED BY THE COURT that Roma L. Moss has elected to take her statutory interest in the estate of Paul J. Moss, deceased by inheritance, descent, and distribution as by law provided, rather than by his Will, except that she is not entitled to any interest in [the farm] * * *, nor the crops thereon, as a matter of law, and by reason of the Ante-Nuptial Agreement, dated July 2, 1965, aforesaid. * * * On April 29, 1977, the Nebraska State Court held a hearing upon the motion of the estate for declaratory judgment and upon the motion of Roma Moss for an order to show cause with respect to Mrs. Moss' claimed allowance for support. As a result of the hearing, the Nebraska State Court on May 23, 1977, entered an order directing the following: 2) That the Administratrix of the Estate is hereby ordered to pay forthwith to the Clerk of the County Court of Hall County, Nebraska, or to Michael A. Fortune, as attorney for Roma Moss, the sum of $ 8,000.00, representing $ 800.00 per month commencing June 24, 1976, to the present. That such payments are to continue each and every month for one year from June 24, 1976, or until further order of the Court. 3) That said payments *669 may come from not only the personal property of the deceased, but other assets of said estate as is necessary to satisfy this allowance. In so far as this Order contradicts the previous Order of this Court dated August 26, 1976, equity requires said Order be amended. It is further ordered that there are no priorities that take precedence over the Widow's allowance and, therefore, in response to the Motion by way of d declaratory judgment filed by the Estate, it is hereby ordered that said Widow's allowance shall be paid first before any other claim on the Estate. The August 26, 1976, order referred to by the court had provided that the allowance was to come solely out of the personal property in the estate. Roma Moss subsequently appealed the decision of the Nebraska State Court contending that the ante-nuptial agreement was invalid because it had been procured through fraud and overreaching by decedent and therefore could not preclude her from having a statutory interest in the farm. The Nebraska Supreme Court, however, found the ante-nuptial agreement to be valid and therefore affirmed the lower court. In the Matter of the Estate of Paul J. Moss,20 Neb. 215, 263 N.W.2d 98 (1978). *670 While this case was pending, appeals on two related matters had been filed by Mrs. Moss from rulings of the Probate Court. One of these appeals challenged the admission of the will to probate and the other was an application for a contempt citation for nonpayment of the widow's allowance. A check in the amount of $ 7,500 dated July 15, 1977, was signed by Mrs. Stueven and delivered to Roma Moss. Typed on the check was the following statement which Mrs. Moss was required to and did sign in order o cash the check: "Full payment of disputed widow's allowance and Roma Moss' participation in joint tax return, any refund will being to the Paul Moss Estate." At the same time Mrs. Moss signed an agreement to drop the appeals from the ruling of the Probate Court challenging the admission of the will to probate and the application for a contempt citation. After the case was appealed to the Nebraska Supreme Court, the estate had to obtain a new attorney to represent it because of the illness of the attorney who had been handling the case. An attorney named Thomas L. Anderson was retained. To obtain Mr. Anderson's services, Mrs. Stueven and her husband signed the following Memorandum of *671 Employment with him: THE UNDERSIGNED, DELBERT and JULIE STUEVEN, employ THOMAS L. ANDERSON, as legal counsel to represent their interest in a case currently on appeal to the Supreme Court of the State of Nebraska, that being, ROMA MOSS, Appellant vs. JULIE STUEVEN, Appellee, Case No. 41350 on the basis of a flat retainer fee in the amount of $ 1,000.00 together with an additional $ 2,000.00 in the event said case is affirmed by the Supreme Court, and in addition, the undersigned retain THOMAS L. ANDERSON to complete all aspects of the Estate of PAUL J. MOSS, to the end that the Executrix is discharged, including any and all tax work attributable to the Estate. The fee for said Estate work shall be $ 3,500.00 for a total of $ 4,500.00 or $ 6,500.00 as the case may be, depending on the result in the Supreme Court. The undersigned, THOMAS L. ANDERSON, in addition to performing the legal services, referred to above, will provide the services of ALVIN ALMS, CPA, for the purpose of completing the tax aspects of the Estate and all accounting fees shall be payable by THOMAS L. ANDERSON out of the fees set out above. Of the $ 6,500 in total fees to Anderson, $ 5,000 had been paid as *672 of the time of the trial in this present case. The accountant, Alvin Alms, has also billed the estate a total of $ 1,440 for preparing 1976 Federal and State income tax returns for decedent and his wife and for work done in connection with this present case. The farm consisted of 157 acres located about 3 miles from Grand Island, Nebraska. Originally it was a quarter section (160 acres) but approximately 3 acres had been taken by the state many years prior to decedent's death to place a road on the section line. Decedent's farm bordered on this paved road. The farm was irrigated from two wells located on the property. A house, a barn, and other farm buildings were on the property at the date of Mr. Moss' death. There were a number of sales of farm properties within a 12-mile radius of decedent's farm during the years 1975 through 1979. The following schedule shows the date, grantor and grantee, distance from decedent's property, number of acres, improvements, and sales price of some of these properties: Distance
From
Date
Subject
of Sale
Grantor
Grantee
Property
1. 1/30/79 Boeka
Spiehs
4 mi.
2. 3/25/75 Juzek
Harder
6 mi.
3.2/17/78 Rehder
Stueven
across road
4. 5/10/78 Kay
Stelk
6 mi.
5. 4/7/76 Weller
Runge
12 mi.
6. 3/9/76 Weller
Peters
4.5 mi.
7. 1/25/75 Juzek
Harder
5.7 mi.
8. 3/10/75 Baasch
Luft
3.8 mi.
9. 2/27/75 Felske
Valhalla
3 mi.
Ranch, Inc.
10. 2/17/78
Frieda Hennings
Stueven
adjoining
Estate
11. 12/23/76
Ag Services,
Dobesh
4.3 mi.
Inc.
Farms, Inc.
12. 3/1/77
Frank Bulger
Davis
9.2 mi.
Estate
13. 10/20/76
Ida Munson
Dobesh
5.8 mi.
Estate
14. 1/29/75
Boeka
Dobesh
2.1 mi.
Farms, Inc.
*673 Date
Number
Sale
Price
of Sale
of Acres
Improvements
Price
Per Acre
1. 1/30/79 158.5
yes
$ 277,375
$ 1,750.00
2. 3/25/75 151.5
no
180,500
1,191.42
3. 2/17/78 119.95
no
255,200
2,127.55
4. 5/10/78 120
yes
252,000
2,100.00
5. 4/7/76 80 no
86,000
1,075.00
6. 3/9/76 80 no
120,000
1,500.00
7. 1/25/75 160
yes
215,000
1,343.75
8. 3/10/75 60 no
103,500
1,725.00
9. 2/27/75 80 yes
110,000
1,375.00
10. 2/17/78
116
yes
255,200
2,220.00
11. 12/23/76
160
no
403,200
2,520.00
12. 3/1/77
157
yes
302,853
1,929.00
13. 10/20/76
40 no
82,500
2,062.50
14. 1/29/75
80 no
124,000
1,550.00
The Federal estate tax return filed by petitioner included the following property in decedent's gross estate: (1) the farm, (2) $ 2,725.27 of life insurance proceeds on a policy in the face amount of $ 2,500 payable to Roma Moss, (3) $ 1,815.10 of insurance proceeds on a policy in the face amount of $ 2,009, payable half to Roma Moss and half to Mrs. Stueven, (4) $ 5,820.40 of life insurance proceeds on a policy in the face amount of $ 5,000 payable to Mrs. Stueven, (5) $ 500 *674 of burial insurance proceeds, (6) funds in a checking account and time certificates totaling $ 31,643.67 which had been held by decedent and Mrs. Stueven jointly with the right of survivorship, and (7) miscellaneous and personal property totaling $ 10,738.95. On the return the entire farm was included in decedent's gross estate at a value of $ 222,940, seven though the return noted that a one-quarter interest in the farm had been gifted to Mrs. Stueven on May 7, 1976. It was further asserted on the return that the estate was entitled to a marital deduction in the amount of $ 11,997.82. The return in Schedule M--Bequests, etc. to Surviving Spouse (Marital Deduction) computed the amount of the marital deduction as follows: Item
number
Description of property interests passing to
surviving spouse
1
Furniture exempt to widow
$ 696.00
2
1/4th interest in tractor, pick-up,
Cultivator, auto & cattle
1,917.50
3
Widow's insurance benefits from
Schedule D
3,632.82
4
Support judgment for widow at $ 800
per month, not to exceed 12 mo
9,600.00
NOTE: The estate subject to the widow's one-fourth interest and support judgment totals $ 11,997.82 *675 figured as follows: Furniture
$ 696.00
Tractor
3,000.00
Pickup
2,500.00
Cultivator
550.00
Automobile
650.00
Cattle
969.00
Insurance
3,632.82
$ 11,997.82
THEREFORE, Schedule M is limited to the amount of property subject to the widow's rights of $ 11,997.82. The return also stated that no Federal estate or state death taxes would be paid out of this amount. In his statutory notice respondent determined a deficiency of $ 42,849.42 against the estate. The statutory notice contained the following explanatory statements: (a) It is determined that the fair market value, at date of death, of real estate was $ 352,000.00 rather than $ 222,940.00 as reported on Schedule A, item 1, of the estate tax return. Accordingly, the taxable estate is increased $ 129,060.00. (b) The amount of $ 9,158.50 is the net adjustment to the items previously agreed to and upon which the tax therefrom has been assessed. Therefore, the taxable estate is increased $ 9,158.50. Petitioner in the petition alleges that the one-quarter interest in the farm which was gifted to Mrs. Stueven was mistakenly included in decedent's gross estate on the Federal estate tax return *676 filed because of a misunderstanding concerning the applicability of the amendments made to section 2035 by the Tax Reform Act of 1976. [2] It was further alleged in the petition that the estate had not previously agreed to the disallowance of the claimed marital deduction and that the estate was entitled to deduct attorneys fees, in addition to the amount of $ 4,500 claimed on the return, in the amount of $ 9,985.71. On brief respondent conceded that the estate was entitled to an additional deduction for administrative expenses consisting of attorneys fees in the amount of $ 8,545.71 leaving in issue only whether the $ 1,440 fee claimed by the estate to be due to the accountant is duplicative of attorneys fees allowed as a deduction. OPINION The first issue for decision is the amount of the marital deduction *677 to which the estate is entitled under section 2056. Of the $ 11,997.82 claimed by petitioner on the estate tax return, respondent has allowed a deduction only for the $ 3,632.82 of insurance proceeds payable to decedent's widow. It is respondent's position that the $ 8,365 balance is nondeductible. The evidence shows only a $ 7,500 payment by the estate to decedent's widow. In cashing the check for the $ 7,500, the widow acknowledged that she had received full payment of the support allowance. It is respondent's contention that since the Nebraska statute authorizing a widow's allowance created a terminable interest, no deduction is allowable for the $ 7,500 payment. Petitioner contends that the $ 7,500 payment was not merely a statutory widow's allowance but was in satisfaction of the widow's statutory rights to the property in the estate. At trial, the administratrix of the estate testified that she had sold the personal property in the estate in order to raise the money to pay the allowance. Section 2056(a) allows a deduction from the gross estate of the value of any interest in property which passes from decedent to his surviving spouse subject to the limitations contained *678 in sections 2056(b), (c), and (d). Section 2056(b), the only limitation which respondent contends is applicable in this case, provides that no deduction shall be allowed for an interest in property which will terminate on the occurrence of an event or contingency if upon the occurrence of the event or contingency terminating the interest of the surviving spouse, the property would go, in whole or in part, to a person other than the surviving spouse or her estate. See sections 20.2056(b)-1(a) through 1(c)(1), Estate Tax Regs. The principle underlying this rule is that decedent's estate may receive a deduction for property passing to the surviving spouse, so long as the property so transferred will be taxable in the estate of the surviving spouse if on hand on her death. Estate of Pipe v. Commissioner,23 T.C. 99, 104 (1954).
It is settled that the relevant time for determining whether an interest is a terminable interest is at the time of decedent's death. Jackson v. United States,376 U.S. 503, 508 (1964); Estate of Abely v. Commissioner,60 T.C. 120, 123 (1973). The $ 7,500 amount paid to Mrs. Moss for her support was authorized *679 under Reissue Revised Statutes of Nebraska, 1943, section 30-103. The Nebraska Supreme Court has held that the right of a surviving spouse to an allowance for support under this statute terminates with her death and that such allowance cannot be recovered by her estate. In re Estate of Samson,142 Neb. 556, 7 N.W.2d 60 (1942); In re Estate of Jacobson,204 Neb. 180, 281 N.W.2d 552 (1979). It is irrelevant that decedent's estate here has in fact made complete payment of the allowance to the widow. As of the date of decedent's death, the support payment authorized for his widow under the Nebraska statute was a terminable interest. United States v. Quivey,292 F.2d 252 (8th Cir. 1961). The Quivey case held that an estate was not entitled to a marital deduction for a support allowance paid under the same Nebraska statute under which Mrs. Moss was authorized a support allowance. In the Quivey case, the residuary beneficiary was a charity and no issue was raised as to the deductibility of property left to the wife by decedent's will. If Mrs. Moss had been awarded no interest in decedent's estate other than the support allowance, *680 respondent's position would clearly be correct under the Quivey case. Under those circumstances, if Mrs. Moss' interest in the widow's support allowance had terminated, it would have become a part of the residuary estate which went to Mrs. Stueven. See sections 20.2056(b)-1(a) and -1(c)(1), Estate Tax Regs. However, the record shows that Mrs. Moss as a surviving spouse also was entitled under Nebraska law to a statutory one-fourth share of the probate estate, excluding the farm. Reissue Revised Statutes of Nebraska, sections 30-107 and 30-101. These Nebraska statutes entitled her to take the one-quarter share of the probate estate which would have passed to her had decedent died intestate. Sadler v. Sadler,184 Neb. 318, 167 N.W.2d 187 (1969). The Nebraska Court held she was entitled to a one-quarter share of decedent's estate excluding the farm. The order granting a widow's support allowance to Mrs. Moss had the practical effect of amending the previous order granting her one-fourth of the estate other than the farm. What Mrs. Moss was entitled to receive because of her right to the statutory share of the estate might be encompassed within the amount the *681 Court was awarding her as a support allowance. The May 23, 1977, order did not vacate the order granting Mrs. Moss her statutory one-fourth of the probate estate, except the farm, but had the effect of combining the two since it provided for payment of the support allowance first from the personal property. The record shows that all the personal property was sold to pay the $ 7,500 allowance to Mrs. Moss. A right to a statutory share of a spouse's estate under Nebraska law is a vested, not terminable, interest. Roma Moss or her estate was entitled to this statutory share of decedent's estate without regard to the payment of the widow's allowance. The fact that the property in the estate in which Mrs. Moss had a one-fourth interest was sold did not cause an item which would otherwise have been clearly deductible under section 2056 to become nondeductible. On the facts here present, we conclude that an amount equal to Mrs. Moss' widow's statutory interest in the estate is deductible since such property would pass to her in any event. To the extent of such amount, the allowance for support simply represented an advancement out of property in the estate which was already hers and which *682 would have passed to her in any event. [3]
*683 The amount of this deductible interest is $ 2,091.25 or one-quarter of the value of the property in decedent's estate subject to the statutory claim. The actual amount of the deduction is the net value of the deductible interest passing from decedent to the surviving spouse. The regulations state that reductions must be made if taxes, debts or expenses of administration would diminish the amount of the property passing. Section 20.2056(b)-4, Estate Tax Regs. But in the present case no such reductions are required. Under the provisions of Nebraska law, the taxes, debts of decedent, and expenses of administration would first have been paid out of the probate property left to Mrs. Stueven under decedent's will. Reissue Revised Statutes of Nebraska, 1943, sections 30.103.01 and 30-1302. Here, the farm left to Mrs. Stueven is more than sufficient to cover the taxes, debts, and expenses of administration. In conclusion, we find that petitioner is entitled to a $ 2,091.25 marital deduction, in addition to the amount allowed by respondent. The second issue is whether two deductions claimed by petitioner are overstated to the extent of $ 1,440. The deductions in question relate *684 to fees to be paid an attorney for the estate and an accountant who performed services for the estate. Respondent does not dispute that the services performed by each were necessary for administration of the estate. Rather, it is respondent's position that the $ 1,440 fee to the accountant was to have been paid by the attorney and was provided for in the $ 6,500 fee which the estate was to pay to the attorney. The Memorandum of Employment, which we quoted in our findings of fact, on its face seems to clearly provide that the accountant's fees would be paid by the attorney. The record does not show that the estate did pay any of the $ 1,440 fee to the accountant and, if in fact the estate did pay any of this fee, why it did so in view of the agreement with the attorney. Although both Mrs. Steuven and the attorney testified at the trial, neither stated whether the Memorandum of Employment covered the work for which the estate had been billed $ 1,440 by the accountant. Neither testified that the $ 1,440 was going to be paid to the accountant by the estate and that such payment would not diminish the fee to be paid to the attorney. Petitioner has failed to show that the estate *685 was obligated to pay the $ 1,440 to the accountant in addition to the fee paid to the attorney. We therefore sustain respondent's disallowance of this claimed $ 1,440 deduction. The third issue is whether the April 28, 1976, transfer by decedent of an undivided one-quarter interest in his farm to Mrs. Stueven was in contemplation of death. In Estate of Johnson v. Commissioner,10 T.C. 680 (1948), we stated that the following are relevant factors to consider in making this determination: (a) the age of decedent at the time of the transfer; (b) decedent's health at the time of such transfer; (c) the interval between the transfer and decedent's death; (d) the amount of the property transferred in proportion to the amount of the property retained; (e) the nature and disposition of decedent; (f) the existence of a general testamentary scheme of which the transfer was a part; (g) the relationship of the donee to decedent; (h) the existence of a long-established policy of making gifts on the part of decedent; (i) the existence of a desire by decedent to escape the burden of managing property by transferring such property to others; (j) the existence of a desire by decedent *686 to vicariously enjoy the enjoyment by the donees of the property transferred; and (l) the existence of a desire by decedent to avoid estate taxes by making an inter vivos transfer of the property. Here the evidence shows that within the four or five years prior to his death at age 61 decedent was in poor health. In 1972 decedent had undergone an operation for cancer of the colon. Although the operation was successful, since there was apparently no recurrence of the cancer, decedent suffered from emphysema, circulatory problems, and other ailments. Moreover, on April 15, 1976, decedent's younger brother died. The evidence shows that the death of his brother had a depressing effect upon decedent. Decedent's widow testified that the death of his brother seemed to cause decedent to "lose his will to live." The April 28, 1976, gift to Mrs. Stueven, decedent's daughter and sole heir under his last will, was made about two weeks after the death of decedent's brother and about two months before decedent's own death. The evidence indicating that the transfer was made for death motives is strong. Petitioner contends that the transfer was prompted by decedent's desire to keep Mrs. Moss *687 from having an interest in the property. If the reason for the transfer was such a desire on decedent's part, it would appear that the transfer was intended as a substitute for testamentary disposition of the property. On the basis of all the evidence of record we find that decedent's April 28, 1976, gift of an undivided one-quarter interest in the farm to his daughter was made in contemplation of death. Since the gift was made in contemplation of death, its value is includable in decedent's gross estate under section 2035. The last issue for decision is the fair market value of the farm at the date of decedent's death. The fair market value of the property is the price at which the property would change hands between a willing buyer and a willing seller, neither of whom is under a compulsion to buy or sell and both having reasonable knowledge of the relevant facts. Section 20.2031-1(b), Estate Tax Regs. In making the factual determination of the fair market value of the farm, petitioner urges us to consider the fact that respondent did not dispute the valuation given the farm on decedent's gift tax return. we attach no significance to this fact. The fact that respondent *688 does not question a valuation shown on a gift tax return in no way binds him to accept such valuation for estate tax purposes. In addition, there would have been no advantage to respondent under the facts here present to give consideration to the valuation shown on the gift tax return. The estate tax return as filed included in the gross estate the one-quarter interest in the farm gifted to Mrs. Stueven. Under section 2012 petitioner was entitled to a credit for the gift tax paid. The fact that respondent did not dispute the valuation of the farm as shown on the gift tax return is irrelevant to a determination of the fair market value of the property for estate tax purposes. As we set forth in our findings, the record contains evidence of a number of sales of property located in the vicinity of decedent's farm. We have included the detail of some of these sales during the years 1975 through 1979 in our findings. The testimony of both of petitioner's experts and of respondent's expert shows that some of the land sold was more nearly comparable to the subject property than other land. In fact, the experts went into great detail concerning the comparability of the various parcels *689 of land sold during the years surrounding the date of decedent's death on June 24, 1976. Also, all three experts valued the land separately from the improvements on the land. The evidence shows that from the beginning of 1975, the date of the first sale available in the record, through January 30, 1979, the latest date of any available sale, farm prices in Nebraska were increasing. The record further shows that some of the parcels sold had improvements and others did not. In order to value the land separately from the improvements, the experts attempted to value the improvements on the land and deduct that value from the total sales price to come to a price of the land without the improvements. One sale was of unimproved land across the road from petitioner's farm and another sale was of improved property adjoining petitioner's farm, but the record indicates that the land involved in each of these sales was somewhat superior to the land comprising decedent's farm. Both of these sales were in 1978 and the price would require some adjustment for the increase in value of farm property between the date of decedent's death and the date of these sales. The record shows that decedent's *690 farm is approximately 3 miles west of Grand Island, Nebraska, and on a paved road. Some of the other properties used by the experts as comparables were not as well located. Considering the evidence as a whole, including all the sales we have listed in our findings and the testimony of the three expert witnesses with respect to the comparability of these properties to petitioner's property as well as the necessary adjustments for price increases in farm values during the years 1975 through 1979, we conclude that decedent's 157 acres of land had an average value per acre at the date of his death of $ 1,500. To this value of the land must be added the value of the improvements on decedent's property. One of petitioner's expert witnesses placed the value of these improvements at $ 20,000, and respondent's expert placed that value at $ 25,000. We have accepted the $ 20,000 valuation of the improvements testified to by one of petitioner's expert witnesses. Therefore, considering all of the evidence of record, we conclude that the fair market value of decedent's farm at the date of his death was $ 255,500, arrived at by multiplying the 157 acres of land by $ 1,500 per acre and adding *691 to this amount the $ 20,000 value of the improvements. Decision will be entered uner Rule 155.
Footnotes
1. These statutes have been repealed as a result of Nebraska's adoption of the Uniform Probate Code. The new probate provisions enacted were in general effective as of January 1, 1977, however, with certain exceptions. Reissue Revised Statutes of Nebraska, 1943, Section 30-2901. Note, in particular, Section 30-2901(b)(4).↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect at the date in issue. Sec. 2035(a) was amended by Pub. L. 94-955, sec. 2001(a)(5) and (d)(1), effective for estates of decedents dying after December 31, 1976, except that the amendment will not apply to transfers made before January 1, 1977.↩
3. See Rev. Rul. 56-26, 1956-1 C.B. 447. Example (8) in sec. 20.2056(b)-1(g) of the Estate Tax Regulations deals with a problem somewhat analogous to the one in the instant case. Example (8) states as follows: Example (8). Assume that pursuant to local law an allowance for support is payable to the decedent's surviving spouse during the period of the administration of the decedent's estate, but that upon her death or remarriage during such period her right to any further allowance will terminate. Assume further that the surviving spouse is sole beneficiary of the decedent's estate. Under such circumstances, the allowance constitutes a deductible interest since any part of the allowance not receivable by the surviving spouse during her lifetime will pass to her estate under the terms of the decedent's will. If, in this example, the decedent bequeathed only one-third of his residuary estate to this surviving spouse, then two-thirds of the allowance for support would constitute a nondeductible terminable interest. The example of course is dealing only with the deductibility of the support allowance. The assumption in the example is that where a spouse is bequeathed one-third of an estate by the deceased spouse's will, her one-third interest would be increased by one-third of the support allowance if the allowance terminated. In effect, this example states that the interest in the estate which the surviving spouse would receive in all events is deductible by the estate even though it may be reduced by payment of a widow's allowance.↩