2024 IL App (1st) 230625-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
November 25, 2024

No. 1-23-0625

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| ANDREA BROCK, individually and as mother and next friend of S.B., a minor, and MICHAEL BROCK, individually and as father and next friend of S.B., a minor, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | No. 18 L 1175 |
| v. | ) ) | The Honorable |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER d/b/a Comer Children's Hospital, | ) ) ) | Sandra G. Ramos, Judge Presiding. |
| Defendant-Appellee. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Pucinski concurred in the judgment.

## ORDER

¶ 1    *Held:* The appellate court dismisses for lack of jurisdiction the appeal on behalf of the appellant in a claim of false imprisonment who died pending appeal and no motion for substitution of an estate or special representative was filed. The appellate court affirms the granting of a motion for sanctions against the plaintiffs' counsel.

¶ 2    With the exception of a claim involving the propriety of sanctions entered against the plaintiffs' counsel in the amount of $9,210 in attorney fees owed to the defendant for discovery misconduct, we dismiss this appeal for lack of appellate jurisdiction. The death of the plaintiffs'

daughter, Samara Brock, during the pendency of this appeal renders this appeal moot. This appeal involves a claim of false imprisonment that the plaintiffs pursued on her behalf while she was a minor. This claim abated upon her death and could not be pursued upon remand. Accordingly, no basis exists whereby the appellate court could effectively provide the relief sought on appeal. Furthermore, the failure to file a motion to substitute Samara's probate estate or a special representative as the plaintiff-appellant within 90 days of her death being spread of record serves as an additional and alternative basis upon which we dismiss the appeal pursued on her behalf.

¶ 3                                    I. BACKGROUND

¶ 4         On December 27, 2015, then 10-year-old Samara was taken by her parents, plaintiffs Andrea and Michael Brock, to the emergency department of the defendant, the University of Chicago Medical Center d/b/a Comer Children's Hospital, with complaints of abdominal pain upon eating and drinking. This had been an ongoing problem for Samara that had led her to experience severe weight loss and malnourishment. However, an extensive workup by physicians at the defendant's facility failed to reveal an underlying medical reason for Samara's symptoms. Her physicians ultimately related her symptoms to a psychiatric diagnosis of avoidant-restrictive food intake disorder (ARFID). Her physicians recommended that Samara be transferred to an inpatient facility for the treatment of pediatric eating disorders at Children's Medical Center in Dallas, Texas. This facility in Dallas was recommended at least in part because it would treat Samara despite the plaintiffs' lack of health insurance coverage for this treatment.

¶ 5         The evidence indicates that the plaintiffs had difficulty accepting this psychiatric diagnosis as the cause of their daughter's symptoms. It indicates they believed that the defendant's staff was not doing enough to identify the true cause of Samara's condition and that they were resistant to the idea of sending her to Dallas for admission to the inpatient facility there. Accordingly,

Samara's medical records contain several entries pertaining to the topic of Samara being removed from the plaintiffs' custody if they attempted to discharge her from the defendant's facility. One note, dated December 29, 2015, by pediatrician Dr. Maria Alkureishi, stated that while the plaintiffs had not attempted to remove Samara, her levels of malnutrition and deconditioning placed her at risk of severe injury or death if she was taken anywhere other than an inpatient facility. The note stated that "should family want to leave we will take primary custody of the child."

¶ 6        Samara's medical records also include entries on the topic of her removal from the plaintiffs' custody to ensure that the State of Indiana, where the plaintiffs resided, would pay the costs of the medical treatment that Samara needed. A note dated January 25, 2016, by pediatrician Dr. Helen Barret Fromme, stated that the inpatient facility in Dallas was the best option that they had found. It stated that the social workers on the defendant's staff had found no viable options for financial support. Dr. Fromme therefore wrote, "If the family cannot pay out of pocket, the remaining option will be to take custody of Samara so that Indiana Medicaid will bear financial responsibility for her care. I mentioned to this to the family on 1/17 as an option if all else fails."

¶ 7        A third note in Samara's medical chart was written by pediatrician Dr. Nicola Meyer Orlov, dated January 26, 2016. It contained several references to the effect that Dr. Orlov had spoken to the plaintiffs and urged them to choose an appropriate inpatient facility (such as the one in Dallas) within the next 48 hours "or DCFS involvement with protective custody will most likely be undertaken."

¶ 8        On February 1, 2016, Samara was discharged from the defendant's facility for the purpose of traveling to Dallas for admission to Children's Medical Center. When the plaintiffs arrived in Dallas, they initially refused to allow her admission to the inpatient facility and took her to a hotel

instead. When the defendant's staff learned of this, they reported the plaintiffs for medical abuse or neglect to the child protective authorities in the states of Indiana and Texas. The plaintiffs thereafter admitted Samara to the inpatient facility the following day.

¶ 9       In 2018, the plaintiffs filed the present action. The operative first amended complaint included two counts. Count I was titled "negligence," but it was not a claim for personal injury to Samara. Rather, its allegations pertained to the manner by which the defendant's staff had conducted its own internal investigation of the plaintiffs for child abuse or neglect instead of immediately following the mandatory reporting procedures of the Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 2014)). This count was initially dismissed based on the plaintiffs' failure to file the affidavit and report required under section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2018)), but the trial court later vacated the dismissal of this count after the plaintiffs filed such an affidavit and report.

¶ 10       Count II of the amended complaint alleged a claim of false imprisonment on behalf of Samara. It alleged that the defendant unlawfully restrained Samara based on "threats of custody relinquishment." While Andrea and Michael initially pursued count II in their individual capacities as well as in their capacities as parents and next friends of Samara, the trial court dismissed the allegations of false imprisonment brought by them in their individual capacities.

¶ 11       The case was eventually set for trial to commence on January 2, 2023. After the case was assigned to a trial judge, the defendant presented a motion for sanctions. It alleged that in the three weeks preceding the trial, an investigator working on behalf of the plaintiffs' attorney's law firm had engaged in multiple communications with employees of the defendant in an effort to obtain hospital policies and procedures outside the normal process of discovery. Following an evidentiary hearing at which it heard the testimony of that investigator, Alec Longfellow, the trial court granted

the motion for sanctions. The trial court determined that the appropriate sanction was for the plaintiffs' counsel to pay the defendant's attorney fees incurred in connection with the investigator's misconduct. The trial court granted a fee petition in the amount of $9,210.

¶ 12    Also prior to trial, the trial court granted the defendant's "Motion *in Limine* No. 5." This motion was directed exclusively at the claim for false imprisonment. It was based upon the premise that while actual force is not necessary to accomplish a false imprisonment, a plaintiff's submission "must be to a threatened and reasonably apprehended force." See *Marcus v. Liebman*, 59 Ill. App. 3d 337, 339 (1978). From this premise, the defendant sought to bar evidence of alleged threats by its agents that had not been "apprehended" by Samara, the subject of the false imprisonment. Specifically, the defendant sought to bar reference to the two entries in Samara's medical records written by Dr. Alkureishi and Dr. Orlov concerning the possibility of Samara being removed from the plaintiffs' custody, as there was no evidence that Samara had "apprehended" these statements. See *supra* ¶¶ 5, 7. The defendant acknowledged in its written motion that Samara had testified at deposition to hearing a statement by Dr. Fromme in which her parents were "given a decision of sending me to an eating disorder facility or handing me over to the State." See *supra* ¶ 6.

¶ 13    In response, the plaintiffs' attorney argued that because Samara's parents were the decisionmakers in this context, it was their "apprehension" of threats that was relevant to the claim of false imprisonment. They argued that because the documented statements by Dr. Alkureishi and Dr. Orlov were made to the parents, those statements were admissible and relevant.

¶ 14    In granting the motion *in limine*, the trial court stated that only threats apprehended by Samara were relevant to her claim of false imprisonment. The trial court then added that it would be hearsay if testimony was elicited from Samara that she apprehended threats based upon what her parents told her that the doctors had said to them or from the contents of entries in her medical

records. The trial court stated to plaintiffs' counsel that he was "not going to talk about what the parents apprehended."

¶ 15       The plaintiffs' counsel responded to this by stating, "But then, Judge, we should stop here, because that's our entire case. That's our entire case. Our case is the parents are the decision-makers. The hospital *** threatens *** to make the care then coerced."

¶ 16       This was followed shortly thereafter in the colloquy by a similar statement by plaintiffs' counsel. Plaintiffs' counsel stated that if he could not introduce evidence of statements made by the doctors to the parents that were not apprehended by Samara, "then I'm not going to tell you we don't have a case, but I'm going to tell you that is our case." Plaintiffs' counsel stated that this ruling by the trial court was effectively "granting them judgment as a matter of law in response to a motion *in limine*."

¶ 17       At the conclusion of the argument on motion *in limine* No. 5, the plaintiffs' counsel asked the trial court for time to speak with the defendant's counsel in private. After that point, no further proceedings of the trial were transcribed by a court reporter or included in the record on appeal. However, the attorneys drafted a written order, which the trial court entered that day, that stated:

> "This cause coming to be heard on defendant's motion to dismiss based on court's evidentiary ruling on motion *in limine*, it is hereby ordered
>
> Said motion is granted with prejudice over plaintiff's objection."

¶ 18       Thereafter, the plaintiffs filed a motion for a new trial. In that motion, they argued that "the Court's ruling on Defendant's Motion *In Limine* No. 5, and related dismissal of the case, was erroneous" because "the minor was aware of the confinement and, therefore, it was not necessary that she know by whom or how the confinement was imposed." They argued that the trial court erred by ruling that they could not base their claims on statements made by the defendant's agents

to them as Samara's parents and medical decisionmakers.

¶ 19    The trial court denied the plaintiffs' motion for new trial as procedurally inappropriate. The trial court stated that "you can certainly appeal and say I was in error on a motion *in limine*," but a request for a new trial in this context was not proper.

¶ 20    The plaintiffs thereafter filed a notice of appeal. This filing occurred 33 days after Samara's 18th birthday. There was never a motion made in either the trial court or this court to substitute Samara as a party to the case in her own right.

¶ 21    On February 1, 2024, following the filing of the appellants' brief in this case, Samara passed away. On April 19, 2024, this court granted a motion by the defendant to take judicial notice of her death. No probate estate or special representative has ever been substituted as appellant to pursue claims on Samara's behalf.

¶ 22                                    II. ANALYSIS

¶ 23                            A. False Imprisonment Claim

¶ 24    The defendant challenges our jurisdiction to consider this appeal on several bases. We also have an independent duty to consider our jurisdiction and to dismiss an appeal where jurisdiction is lacking. *In re Estate of O'Gara*, 2022 IL App (1st) 210709, ¶ 28. Upon considering our jurisdiction in this case, we conclude that the primary impediment to appellate jurisdiction is the fact that Samara's death has made it impossible for us to effectively grant the relief of remanding this case for trial on a claim for false imprisonment, which does not survive her death.

¶ 25    The general rule is that the death of a plaintiff pending appeal from a judgment for a defendant in a non-surviving action results in abatement, and the appeal must be dismissed; the reason is that since the plaintiff does not have a verdict in her favor, if the judgment against her is reversed, no new trial could be had because the action has abated upon her death. *Tunnell v. Edwardsville*

*Intelligencer, Inc.*, 43 Ill. 2d 239, 242-43 (1969). This is a specific application of the general principle that the existence of an actual controversy is essential to appellate jurisdiction, and where intervening events occur that make it impossible for the reviewing court to grant effectual relief to the complaining party, the appeal becomes moot and will not be the subject of consideration. See *In re Benny M.*, 2017 IL 120133, ¶ 17.

¶ 26     We begin by clarifying that the only claim that is properly preserved and presented to us is the claim on Samara's behalf for false imprisonment. In their reply brief, the plaintiffs make repeated assertions that both Samara's false imprisonment claim and her "negligence claim" survive her death. However, no claim for negligence is before us. In the trial court, the plaintiffs pursued a claim for negligence that concerned the way by which the defendant conducted its investigation of them for child abuse in alleged nonconformance with the Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 2014)). Although the plaintiffs pursued this negligence claim in the trial court, they make no argument in their appellate brief that the trial court erred by dismissing it. This is consistent with their motion for new trial, which likewise made no argument seeking a new trial on the negligence claim. Instead, as explained below, all of the plaintiffs' arguments for reversal and a new trial involve the trial court's alleged error in granting the defendant's motion *in limine* No. 5, which pertained only to the claim of false imprisonment and had nothing to do with any negligence claim. Accordingly, any argument that the trial court erred in dismissing their negligence claim is forfeited and not before us. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in an appellant's opening brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 27     Furthermore, although no transcript of this portion of proceedings is included in the record on appeal, we discern from context that the plaintiffs either abandoned their negligence claim or

acquiesced in its dismissal so that they could immediately appeal the trial court's ruling on the motion *in limine* pertaining to false imprisonment. Under the doctrine of invited error, a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constitute error. *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 36. In the absence of a transcript, we will not presume that the plaintiffs objected to the dismissal of their negligence claim or otherwise preserved any argument as to the propriety of its dismissal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (any doubts which arise from the incompleteness of the record will be resolved against the appellant).

¶ 28    As to the false imprisonment claim, the primary relief requested is that we vacate the dismissal and remand it for trial based upon the trial court's asserted error in granting the defendant's motion *in limine* No. 5. The plaintiffs' central argument is that the trial court committed reversible error when it ruled that threats made to Samara's parents, and not to Samara directly, were not "apprehended" by Samara and were thus inadmissible for that reason. They assert that this ruling undermined their ability to prevail under their theory of the case, which was that the defendant's agents' threats to Samara's parents (1) were actionable because they were the decisionmakers for her medical care, and (2) amounted to coerced compliance with the defendant's care plan. They argue that the trial court's ruling improperly added an element of "apprehension" that is not a required element of the tort of false imprisonment. Rather, they contend, a claim of false imprisonment requires only that the subject of the confinement is "conscious of the confinement or is harmed by it." See Restatement (Second) of Torts § 35(1)(c) (1965).

¶ 29    The second argument by which the plaintiffs seek a new trial is that the trial court erred when it granted the defendant's motion to dismiss. This is a procedural argument that motion *in limine* No. 5 was an improper dispositive motion brought on the day of trial rather than a proper

evidentiary motion *in limine*, and they argue that it should have been denied for this reason.[1]

¶ 30 Our ability to resolve these arguments on their merits is dependent on whether a claim for false imprisonment on Samara's behalf survives her death or abates because of it. If the action abates and no new trial could occur on remand regardless of how we decide this appeal on the merits, then the appeal must be dismissed as moot. See *Tunnell*, 43 Ill. 2d at 242-43; accord *Benny M.*, 2017 IL 120133, ¶ 17.

¶ 31 At common law, an action for the tort of false imprisonment did not survive the death of the victim or the tortfeasor. W. Keeton, Prosser & Keeton on the Law of Torts § 125A, at 940-41 (5th ed. 1984). In Illinois, the Survival Statute allows, *inter alia*, for the survival of "actions to recover damages, including punitive damages when applicable, for an injury to the person (except slander and libel)." 755 ILCS 5/27-6 (West Supp. 2023). However, it has been recognized for well over a century that the reference in this statute to damages for an "injury to the person" requires that the damages be of a physical character. See *e.g.*, *Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant & Pancake House, Inc.*, 2023 IL App (1st) 220588-U, ¶ 38 ("Illinois courts have consistently interpreted the phrase 'injury to the person' in the statute to mean physical injury"); *Mattyasovszky v. West Towns Bus Co.*, 21 Ill. App. 3d 46, 54 (1974) ("The words 'damages for injury to the person' clearly and unequivocally mean damages of a physical character"); *Denslow v. Hutchinson*, 152 Ill. App. 502, 504 (1910) ("We are of the opinion that the words: 'actions for damages for an injury to the person' in the statute extend to and include only actions for damages

---

[1] The plaintiffs also challenge two additional trial court rulings, but neither of these is a basis for vacating the dismissal of the case. First, they challenge the trial court's ruling that required them to comply with section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2018)) by filing an affidavit and health care provider's report. The case was not dismissed on this basis, and the plaintiffs complied with the trial court's order. The plaintiffs also challenge the trial court's ruling on a discovery issue concerning the sufficiency of the defendant's production of audit trails. These are both issues we would reach only if we found that the false imprisonment claim should be remanded for trial.

to the person of a physical character").

¶ 32    In *Strandell v. Jackson County*, 648 F. Supp. 126, 135 (S.D. Ill. 1986), the federal district court ruled that a claim of false imprisonment did not survive under the Survival Statute because the injury in such a claim is not physical in nature. The court cited *Pinkerton v. Gilbert*, 22 Ill. App. 568, 569 (1886), wherein this court recognized without elaboration that a claim of false imprisonment had abated as to a defendant who died during suit. *Strandell*, 648 F. Supp. at 135.

¶ 33    This ruling of *Strandell* is correct. A physical or bodily injury is not a required element in a claim for false imprisonment. This court has set forth the required elements of a claim of false imprisonment arising in a hospital setting as requiring a plaintiff to allege and prove "that his personal liberty was unreasonably or unlawfully restrained against his will and that defendant(s) caused or procured the restraint." *Arthur v. Lutheran General Hospital, Inc.*, 295 Ill. App. 3d 818, 825-26 (1998); accord *Doe v. Channon*, 335 Ill. App. 3d 709, 713 (2002) (same). The fifth district has described a false imprisonment claim as having two elements: (1) that the plaintiff's personal freedom was curtailed against her wishes and (2) that her detention was unreasonable or unlawful. *Irvin v. Southern Illinois Healthcare*, 2019 IL App (5th) 170446, ¶ 41.

¶ 34    This court has also previously discussed that the interest protected by the tort of false imprisonment is not a plaintiff's freedom from physical injury, but rather it prevents infringement of the plaintiff's freedom to move freely. No physical injury is required to maintain the claim. We explained:

> " 'The action for the tort of false imprisonment, sometimes called false arrest, is another lineal descendant of the old action of trespass [to person]. It protects the personal interest in freedom from restraint from movement.' W. Keeton, Prosser & Keeton on Torts § 11, at 47 (5th ed.1984) (hereinafter Prosser & Keeton).

The interest involved is 'in a sense a mental one,' and false imprisonment may be maintained without proof of actual damages. Prosser & Keeton at 47. The tort is complete after 'even a brief restraint on the plaintiff's freedom,' and the plaintiff may recover nominal damages. Prosser & Keeton at 48. In short, the plaintiff has a dignitary interest in freedom from any restraint. See generally 19 Ill. L. & Prac. *False Imprisonment & Unlawful Restraint* (1991)." *Arthur*, 295 Ill. App. 3d at 825.

Accordingly, because physical or bodily injury is neither the interest sought to be prevented nor an element required to establish a claim of false imprisonment, such a claim does not survive as an action to recover damages for "injury to the person" under the Survival Statute. 755 ILCS 5/27-6 (West Supp. 2023).

¶ 35    The fact that a false imprisonment claim does not require proof of physical injury appears to be fully consistent with the false imprisonment claim that the plaintiffs were seeking to prove on Samara's behalf in this case. In our review of the record on appeal, we find nothing indicating that the plaintiffs were attempting to establish that Samara suffered any physical injury that was proximately caused by the defendant's tortious conduct. Instead, her damages appear to be in the nature of emotional distress, fear, and anxiety about her hospitalization and separation from her parents. The defendant directs our attention to the fact that the plaintiffs' own expert witness, Jonathan Cohen, M.D., testified that he was not aware of any physical injury to Samara from the defendant's conduct. The plaintiffs do not direct our attention to any testimony that would contradict Dr. Cohen on this point.

¶ 36    In their reply brief, the plaintiffs seek to avoid abatement by asserting that Samara did suffer injury when "she was tied down and force fed while in Defendant's care" and again at the facility in Dallas. However, the plaintiffs fail to cite any page of the record where we may find evidence

supporting this statement and understand how such injury purportedly related to their claim of false imprisonment. This violates Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which requires that the "Argument" section of a brief include "citation of the authorities and the pages of the record relied on." Failure to provide proper citations to the record is a violation of this rule and results in waiver of the facts or argument lacking such citation. *Engle v. Foley & Lardner, LLP*, 393 Ill. App. 3d 838, 854 (2009). The appellate court "is not a depository in which an appellant may dump its arguments without factual foundation in hopes that we will sift through the entire record to find support for a determination favorable to appellant's position." *Coffey v. Hancock*, 122 Ill. App. 3d 442, 444 (1984). As stated, we find no indication in the record that the plaintiffs were attempting to establish that Samara suffered physical injury as a result of her false imprisonment.

¶ 37     The plaintiffs also argue in their reply brief that Samara's claim survives her death because (1) negligence is a claim that is assignable under common law and (2) her cause of action for negligence constitutes personal property and survives as an "action[ ] to recover damages for an injury to real or personal property." 755 ILCS 5/27-6 (West 2023 supp.). However, these are bare assertions that the plaintiffs fail to develop as arguments in any meaningful way (see *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010)), and we find no merit to either argument.

¶ 38     In addition to our conclusion that Samara's claims on appeal must be dismissed on grounds of abatement, we believe that the dismissal of this appeal as to Samara is also warranted under section 2-1008(b) of the Code of Civil Procedure (735 ILCS 5/2-1008(b) (West 2022)). That statute governs substitution where a party to an action dies, and it requires the timely presentation of a motion to substitute the deceased party's probate estate or a special representative for the purpose of continuing to prosecute the action. *Id.* The statute expressly states, "If a motion to

substitute is not filed within 90 days after the death is suggested of record, the action may be dismissed as to the deceased party." *Id.* In this case, Samara's death was spread of record on April 19, 2024. More than 90 days have now passed since that date, and no motion to substitute has ever been filed. We granted the plaintiffs four extensions of time to file a reply brief over a five-month period, based upon their representations to us that they were in the process of opening a probate estate to attempt to pursue Samara's claims. However, no probate estate was ever opened on her behalf. Thus, the failure to file a timely motion to substitute a proper appellant to pursue Samara's claims on appeal is an alternative basis upon which we also dismiss this appeal as to Samara.

¶ 39                                      B. Sanctions Against Plaintiffs' Counsel

¶ 40         In addition to the claim on Samara's behalf, the plaintiffs' appellate brief also includes argument that that the trial court erred when it entered sanctions against plaintiffs' counsel. Despite our conclusion that we lack jurisdiction to consider arguments concerning Samara's claim for false imprisonment, we do not find that this jurisdictional impediment prevents our consideration of the argument by plaintiffs' counsel concerning the propriety of sanctions. See *Dunaway v. Ashland Oil, Inc.*, 189 Ill. App. 3d 106, 109-10 (1989) (where attorney appeals the entry of sanctions levied against attorney in an appeal brought only in the name of the attorney's client, appellate court can deem the attorney as party-appellant for purposes of ensuring its jurisdiction).

¶ 41         The trial court's entry of sanctions in this case was based upon the conduct of an investigator named Alec Longfellow, who was employed by plaintiffs' counsel's law firm. Within the three weeks preceding the trial in this case, Longfellow engaged in multiple communications with employees of the defendant's medical library in an attempt to obtain certain policies and procedures of the defendant pertaining to the discharge of patients.

¶ 42         The trial court's entry of sanctions occurred after it conducted an evidentiary hearing in which

it heard the testimony of Longfellow. He testified that in December 2022, plaintiffs' counsel had given him directions to search for publicly available information concerning the defendant's policies and procedures. Longfellow testified that he exchanged several e-mails with a librarian at the defendant's medical library concerning this request. He also spoke on the telephone with one person and left a message for another. He acknowledged that he used his personal e-mail account for these communications. He also acknowledged that he had been expressly asked by at least one of the defendant's employees for the identity of his employer, and he answered that he worked for himself. One of his e-mails also states that he was seeking this information because he was "working on a paper regarding the evolution of hospital policies and procedures over the last decade (especially with changes due to COVID-19)." Longfellow acknowledged to being untruthful to the defendant's employees about the reason for his request, stating that he did so in an attempt to bypass the defendant's employees' unwillingness to help him if they found out he was working for a law firm. He testified that he did not obtain any documents as a result of his communications with the defendant's employees.

¶ 43    The trial court granted the defendant's motion for sanctions based on the above conduct. It noted that there had been an order entered January 14, 2022, denying a request by the plaintiffs in discovery for certain policies and procedures. It also noted that this conduct occurred close to trial and two months after all discovery had closed in the case. The trial court noted that while Longfellow had acted wrongly and done so at the instance of plaintiffs' counsel, his efforts to obtain information were also unsuccessful. As an appropriate sanction, the trial court ordered the plaintiffs' counsel to pay the attorney fees incurred by the defendant to investigate Longfellow's communication with the defendant's employees so close to trial and to file a motion for sanctions.

¶ 44    Plaintiffs' counsel challenges the trial court's granting of the motion for sanctions on two

bases. First, he contends that it was reversible error for the trial court to enter discovery sanctions without requiring compliance with Illinois Supreme Court Rule 201(k) (eff. July 1, 2014). That rule states:

"The parties shall facilitate discovery under these rules and shall make reasonable attempts to resolve differences over discovery. Every motion with respect to discovery shall incorporate a statement that counsel responsible for trial of the case after personal consultation and reasonable attempts to resolve differences have been unable to reach an accord or that opposing counsel made himself or herself unavailable for personal consultation or was unreasonable in attempts to resolve differences." *Id.*

¶ 45    This argument by plaintiffs' counsel is without merit. The motion for sanctions at issue here did not arise from "differences over discovery" that potentially could have been resolved by personal consultation between opposing counsel prior to bringing the motion. Rule 201(k) has no applicability in this context.

¶ 46    Plaintiffs' counsel's second argument is that sanctions are authorized only for willful violations of Illinois Supreme Court Rule 219(d) (eff. July 1, 2002). He argues that attempting to obtain publicly available policies and procedures from a library is not an improper discovery method, even after discovery closes, nor can it be deemed willful.

¶ 47    Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) authorizes a trial court to impose sanctions, *inter alia*, where a party "fails to comply with any order entered under these rules" governing the discovery process and pretrial procedure. The sanctions authorized by Rule 219(c) include an order that the offending party pay the reasonable attorney fees and expenses incurred by the other party. *Id.* A party's failure to comply with a court order need not be willful for sanctions to be imposed under Rule 219(c). *In re Marriage of Keegan & Papin*, 2022 IL App (2d)

190495, ¶ 44. A trial court's imposition of sanctions will not be disturbed on review unless the sanctions constitute an abuse of discretion. *Koppel v. Michael*, 374 Ill. App. 3d 998, 1004 (2007).

¶ 48      The trial court's imposition of sanctions was not an abuse of discretion in this case. Initially, we cannot agree with plaintiffs' counsel that it is clear no willful misconduct occurred in this instance. However, it is evident from the trial court's comments that its primary concerns were that plaintiffs' counsel, to the extent that he was seeking policies and procedures for use at trial, was failing to comply with the court order that had closed discovery two months earlier and possibly also the order of January 14, 2022, which denied his request for production of policies and procedures. The trial court was also concerned with the dishonest statements by Longfellow to the defendant's employees to hide the fact that he was seeking the information for use by a law firm, as well as the fact that the defendant's counsel had to interrupt its trial preparation to investigate this matter. We find that the trial court's concerns were justified under these facts and that its granting of the motion for sanctions was not an abuse of discretion.

¶ 49      Finally, plaintiffs' counsel argues that the defendant failed to prove the reasonableness of the $9,210 in attorney fees that it requested in its fee petition. However, plaintiffs' counsel's failure to provide us with a transcript of the hearing at which the trial court heard argument and ruled on the amount sought in the fee petition is fatal to this argument. The reasonableness of an award of attorney fees is a matter that we review for abuse of discretion. *900 North Rush LLC v. Intermix Holdco, Inc.*, 2019 IL App (1st) 181914, ¶ 41. Without a transcript showing how the trial court viewed the reasonableness of the fees sought, we have no basis for concluding that it abused its discretion by awarding that amount. *Foutch*, 99 Ill. 2d at 392. As appellant on this issue, plaintiffs' counsel has the burden of presenting us with a sufficiently complete record of the trial court proceedings to support his claim of error, and in the absence of such a record, we will presume

that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Id.* at 391-92.

¶ 50                                III. CONCLUSION

¶ 51        For the foregoing reasons, the trial court's entry of sanctions against the plaintiffs' attorney is affirmed. This appeal is dismissed as to all other claims and arguments for lack of jurisdiction.

¶ 52        Affirmed in part.

¶ 53        Appeal dismissed in part.