**2026 IL 131187**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 131187)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. GREGORY DOBBINS, Appellant.

*Opinion filed January 23, 2026.*

CHIEF JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Justices Theis, Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    On May 13, 2022, the decedent, Gregory Dobbins, filed a petition for a certificate of innocence (COI) pursuant to section 2-702 of the Code of Civil Procedure (Code) (735 ILCS 5/2-702 (West 2020)). The filing of Dobbins's petition occurred after the circuit court of Cook County granted his section 2-1401 petition for relief from judgment (see *id.* § 2-1401) and vacated his conviction for

possession of a controlled substance, as his conviction was based on fabricated evidence that was used at trial by former Chicago police sergeant Ronald Watts and his team of coconspirators.

¶ 2    Two weeks before the hearing on Dobbins's petition for a COI, he passed away on June 8, 2022. Thereafter, Dobbins's life partner and the mother of his minor children, Katrina Crawford (also known as Katrina Dobbins),[1] moved to substitute herself as petitioner and to proceed with the COI cause of action on behalf of Dobbins's estate.

¶ 3    On March 15, 2023, the circuit court denied the motion to substitute and dismissed the COI petition, reasoning that the right to a COI is a personal statutory right that does not survive the petitioner's death. The appellate court affirmed the decision of the circuit court. 2024 IL App (1st) 230566, ¶ 3.

¶ 4    We allowed the petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Dec. 7, 2023). For the following reasons, we affirm the judgment of the appellate court.

¶ 5                                    I. BACKGROUND

¶ 6                              A. Circuit Court Proceedings

¶ 7    On October 7, 2009, Dobbins was wrongfully convicted of possession of a controlled substance and served 30 months in prison as a result of a drug conspiracy involving former Chicago police sergeant Ronald Watts and members of his team.

¶ 8    In July 2021, Dobbins filed a petition for relief from judgment in the circuit court pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2020)) requesting that his conviction be vacated, as it was based on fabricated evidence. On April 22, 2022, the circuit court granted the petition, vacated Dobbins's conviction, and granted the State's motion of *nolle prosequi* on the charges against him.

---

[1]Katrina's last name is listed as "Crawford" in some filings and "Dobbins" in others. In the interest of clarity, she will be referred to as "Katrina" throughout this opinion.

¶ 9                              1. Petition for Certificate of Innocence

¶ 10        On May 13, 2022, Dobbins filed a petition for a certificate of innocence (COI)
pursuant to section 2-702 of the Code. *Id.* § 2-702. His petition was filed
contemporaneously with those of several other individuals whose convictions had
been vacated based on the same pattern of misconduct perpetrated by former
Sergeant Watts.

¶ 11        The State did not oppose the petition, and the circuit court set Dobbins's petition
for hearing on June 22, 2022, along with the petitions of the other Watts-related
exonerees. That same day, the petitions for the other individuals were granted, and
the COIs were issued. However, Dobbins never received a COI, nor was a hearing
conducted because on June 8, 2022, two weeks before the scheduled hearing,
Dobbins passed away unexpectedly.

¶ 12                              2. Substitution Proceedings

¶ 13        On June 22, 2022, at the originally scheduled hearing for Dobbins's petition,
Dobbins's counsel informed the court of Dobbins's death and requested a
continuance to allow time for an estate to be opened and for the estate to be
substituted in the matter. The circuit court granted the continuance.

¶ 14        On January 25, 2023, Katrina was appointed as the independent administrator
of Dobbins's estate. As the administrator and pursuant to section 2-1008(b) of the
Code (*id.* § 2-1008), Katrina moved to substitute herself as petitioner and to proceed
with the COI claim on behalf of Dobbins's estate.

¶ 15        Relying on the appellate court's decision in *Rudy v. People*, 2013 IL App (1st)
113449, the State objected to the substitution. The State maintained, in accordance
with the *Rudy* decision, that Katrina could not seek a COI on behalf of Dobbins
because the COI statute did not permit the estate of a wrongfully convicted person
to obtain a COI, as the COI is "personal to the individual who was wrongly
convicted rather than to one suing on his or her behalf." *Id.* ¶ 13.

¶ 16        On March 15, 2023, the circuit court denied the motion to substitute and
dismissed the COI petition, reasoning that the right to a COI is a personal statutory
right that does not survive the petitioner's death. Katrina filed a notice of appeal in

the appellate court on March 15, 2023.

¶ 17                                  B. Appellate Court Proceedings

¶ 18       On appeal, Katrina argued that the circuit court erred in denying the motion to substitute and in dismissing the COI petition. Specifically, Katrina maintained that the COI action survived Dobbins's death and cited the Survival Act (755 ILCS 5/27-6 (West 2020)) as support for her position. The State asserted that, because Katrina never raised in the circuit court the argument that the Survival Act applies, the appellate court should not reach that issue, as it was forfeited. The appellate court affirmed the judgment of the circuit court. 2024 IL App (1st) 230566, ¶ 3. In so doing, the appellate court first declined to dismiss the appeal on forfeiture grounds. *Id.* ¶ 16. The court found, *inter alia*, that the estate had always argued that the "pending action should continue after Gregory's death" and the estate's "distinction of the *Rudy* decision was essentially a survival argument" without specifically citing the statute. *Id.* ¶ 14. The appellate court noted that the *Rudy* decision found that the COI statute did not permit the estate of a wrongly convicted individual to seek a COI, which was "personal to the individual who was wrongly convicted rather than to one suing on his or her behalf." *Rudy*, 2013 IL App (1st) 113449, ¶ 13.

¶ 19       Additionally, the appellate court found that nothing in the COI statute provides for an award of damages to a successful petitioner, meaning that the COI action itself is not an action to recover damages. 2024 IL App (1st) 230566, ¶ 24. The appellate court acknowledged that, while a petitioner with a COI will almost certainly receive an award of damages before the Court of Claims, a petitioner is not automatically entitled to damages as a result of having a COI—he must file an action with the Court of Claims. *Id.* ¶¶ 24-25. Despite acknowledging that it "would prefer to rule otherwise" (*id.* ¶ 3), the appellate court held that the COI action abated with Dobbins's death under the plain language of the Survival Act (755 ILCS 5/27-6 (West 2020). 2024 IL App (1st) 230566, ¶ 26.

## II. ANALYSIS

¶ 20

¶ 21     The primary issue before this court is whether a COI action survives a petitioner's death under the Survival Act (755 ILCS 5/27-6 (West 2020)).

### A. Standard of Review

¶ 22

¶ 23     This court is being asked to (1) exercise its supervisory authority and either remand the cause with directions to the lower court to issue a COI *nunc pro tunc* to a date prior to Dobbins's death or apply the *Tunnell* exception (*Tunnell v. Edwardsville Intelligencer, Inc.*, 43 Ill. 2d 239, 243-44 (1969)) or, in the alternative, (2) ascertain whether claims under the COI statute can survive a petitioner's death under the Survival Act.

¶ 24     These questions present issues of statutory interpretation and other questions of law, which we review *de novo*. *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 29; *Haage v. Zavala*, 2021 IL 125918, ¶ 41 ("Issues of statutory construction present questions of law that we review *de novo*.").

### B. Supervisory Authority: *Nunc Pro Tunc* Order

¶ 25

¶ 26     Katrina first argues that this court should exercise its supervisory authority (Ill. Const. 1970, art. VI, § 16) and issue an order *nunc pro tunc* to a date prior to Dobbins's death to ensure that he receives a COI. The purpose of a *nunc pro tunc* order is to correct the record of judgment, it is not to alter the actual judgment.

> "[T]he use of *nunc pro tunc* orders or judgments is limited to incorporating into the record something which was actually previously done by the court but inadvertently omitted by clerical error. It may not be used for supplying omitted judicial action, or correcting judicial errors under the pretense of correcting clerical errors." *People v. Melchor*, 226 Ill. 2d 24, 32-33 (2007).

¶ 27     In this case, the circuit court had not yet entered a judgment granting Dobbins a COI. Because he died on June 8, 2022, before the hearing and before judgment was entered, based on the limitations of *nunc pro tunc* orders (limited to incorporating into the record something that was actually previously done by the

court but inadvertently omitted by clerical error), there would be no legal basis to remand the cause with instructions to the court to enter a *nunc pro tunc* order issuing a COI prior to Dobbins's death.

¶ 28    There is nothing in the record (no signed order, no docket entries, no clerk's notes, or other written memorials) that would indicate that the circuit court intended to grant Dobbins's petition for a COI but failed to do so inadvertently. The grant of Dobbins's motion to vacate his wrongful conviction is one element, pursuant to subsection (g)[2] of the COI statute, that needs to be met in order for a court to grant a COI. However, granting the motion to vacate Dobbins's wrongful conviction does not constitute evidence that the circuit court decided to grant the petition prior to Dobbins's death.

¶ 29    Therefore, remanding the cause to the circuit court with directions to issue the order *nunc pro tunc* to a date before Dobbins passed away would be mandating that the circuit court do something new (enter a judgment granting the petition for a COI), not "incorporating into the record something which was actually previously done by the court but inadvertently omitted by clerical error." *Id.* at 32. Therefore, we will not remand the cause to the circuit court with directions to enter an order *nunc pro tunc* to a date before Dobbins passed away.

¶ 30                    C. Supervisory Authority: *Tunnell* Exception

¶ 31    Katrina next argues that the COI can be granted pursuant to the *Tunnell* exception, as Dobbins's COI action was ripe for judgment. Katrina relies on *Tunnell* for the proposition that Dobbins's estate is entitled to relief because his death did not abate his cause of action. See *Tunnell*, 43 Ill. 2d at 243-44. In other words, relying on *Tunnell*, "all factual questions had been resolved before the plaintiff died," "[n]o new trial is involved, and the reviewing court is in a position

---

[2]Subsection (g) requires the petitioner to prove four elements by a preponderance of the evidence to obtain a COI: (1) conviction of one or more felonies and having served all or part of a sentence, (2) the conviction was reversed or vacated, (3) innocence of the charges against him or acts/omissions did not amount to the charged felony or misdemeanor against the State, and (4) the petitioner did not voluntarily cause or bring about his conviction. 735 ILCS 5/2-702(g) (West 2020).

to determine the controversy on the merits." *Id.* The State asserts that, because no judgment or decision was entered, the *Tunnell* exception does not apply. We agree with the State.

¶ 32 This court is vested by the Illinois Constitution with supervisory authority over the lower courts in the state. *People v. Coty*, 2020 IL 123972, ¶ 49 (citing Ill. Const. 1970, art. VI, § 16, and *In re J.T.*, 221 Ill. 2d 338, 347 (2006)). We explained in *Coty* that "[t]his authority is unlimited in extent and hampered by no specific rules or means for its exercise. [Citation.] It is an unequivocal grant of power." (Internal quotation marks omitted.) *Id.* Although there is no limit on this court's supervisory authority, it is not exercised at any time or for any reason—we exercise restraint and invoke this authority under exceptional circumstances. *Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 17 ("While our supervisory authority may be expansive, it is invoked with restraint. *** We exercise our supervisory authority only under exceptional circumstances."). The formal exercise of this authority is through a supervisory order, and the "predomina[nt] use is to address issues which are brought to our attention in the context of petitions for leave to appeal, but which do not warrant full briefing, oral argument and issuance of an opinion." *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510, 512 (2001). "The most typical example of this is when a new opinion is released by this court or by the Supreme Court of the United States which appears to be dispositive of other cases pending before us on petitions for leave to appeal." *Id.* Additionally, a supervisory order is appropriate when "the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice [citation] or intervention is necessary to keep an inferior tribunal from acting beyond the scope of its authority." *Id.* at 513.

¶ 33 We find no such exceptional circumstances present in this case. This matter has been fully briefed, and oral argument has been completed. Moreover, there is no evidence that the lower courts acted or entered a judgment beyond the scope of their authority. For these reasons, we decline to exercise our supervisory authority.

¶ 34 Additionally, we note that the facts in *Tunnell* are distinguishable from the facts in this case. In *Tunnell*, the plaintiff filed a defamation action. *Tunnell*, 43 Ill. 2d at 240. After a jury trial, a verdict was entered in favor of the plaintiff. *Id.* at 241. The defendant moved for a judgment notwithstanding the verdict (JNOV), and the trial

court entered a JNOV in favor of the defendant. The plaintiff appealed and passed away after the briefs were filed. *Id.* We found that a defamation action (which normally abates upon death) should be allowed to continue despite a party's death because "all factual questions had been resolved before the plaintiff died. No new trial is involved, and the reviewing court is in a position to determine the controversy on the merits. The present case was ripe for judgment when the plaintiff died ***." *Id.* at 243-44.

¶ 35    There is one key distinction between the facts in *Tunnell* and the facts in this case. All factual questions were resolved in *Tunnell*, and a verdict had been reached. However, in this case, Dobbins passed away before a hearing or decision was reached from which the circuit court could enter a judgment. Therefore, because no decision had been made, Dobbins's case was not ripe for judgment, and the *Tunnell* exception does not apply.

¶ 36    However, even if this court remanded the cause to the circuit court to conduct a hearing to issue a COI, the question then becomes whether a cause of action for a COI survives the death of the petitioner.

¶ 37                    D. Survivability of a Petition for COI
                              After Petitioner's Death

¶ 38    Katrina next argues that, if this court declines to exercise its supervisory authority, Dobbins's petition survives his death under the Survival Act (755 ILCS 5/27-6 (West 2020)). The resolution of the issue requires this court to interpret provisions of the COI statute as well as the Survival Act. The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *People v. Washington*, 2023 IL 127952, ¶ 27. When interpreting statutory language, we are to give effect to the plain and ordinary meaning, avoiding absurd, unreasonable, unjust, or inconvenient results. See *People v. Palmer*, 2021 IL 125621, ¶ 53; *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 17; *In re Mary Ann P.*, 202 Ill. 2d 393, 406 (2002). In determining the plain and ordinary meaning of a statute, we must consider the statute in its entirety, the subject addressed, and the apparent intent of the legislature when it enacted the statute. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16; *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). We construe words and phrases not in isolation

but in light of other relevant provisions. *People v. Jackson*, 2011 IL 110615, ¶ 12. Unless the words are defined within the statute itself, they will be " 'interpreted as taking their ordinary, contemporary, common meaning.' " *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). No part of the statute should be considered superfluous or meaningless. *Jackson*, 2011 IL 110615, ¶ 12. A court may not "depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express." *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). A court also considers the reason for the statute, the purposes to be achieved, the evils intended to be remedied, and the consequences of interpreting the statute one way or another. *Jackson*, 2011 IL 110615, ¶ 12. Once again, we review issues of statutory interpretation and other questions of law *de novo*. *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 29; *Haage*, 2021 IL 125918, ¶ 41.

¶ 39                                  1. Waiver/Forfeiture

¶ 40         Before considering whether the cause of action for a COI survives Dobbins's death, we must address the State's contention that this issue was waived on appeal because it was not raised in the lower courts. Specifically, the State relies on our decision in *McMath v. Katholi*, 191 Ill. 2d 251, 255-56 (2000), for the proposition that Katrina did not merely forfeit review of this issue on appeal but, instead, she intentionally waived it by misleading the court on which law controls—allowing the circuit court to believe that the law governing her claim was "limited to *Rudy* and the *Tunnell* exception." In the circuit court, Katrina only argued that the grounds for substitution were under the COI statute itself or the *Tunnell* exception, not the Survival Act. However, Katrina has consistently argued that the COI action survived Dobbins's death. Therefore, the argument was raised, albeit not expressly under the Survival Act.

¶ 41         Additionally, waiver and forfeiture rules serve as an admonition to the litigants rather than a limitation upon the jurisdiction of the reviewing court, and courts of review may sometimes override considerations of waiver or forfeiture in the interests of achieving a just result and maintaining a sound and uniform body of precedent. *People v. McCarty*, 223 Ill. 2d 109, 142 (2006). Therefore, because this is a matter of first impression and in the interest of providing clarity and a uniform

body of precedent, we will review the question before us.

¶ 42                    2. Survival of a COI Cause of Action Under the
Survival Act

¶ 43        Subsection (a) of the COI statute establishes the statute's purpose and provides, in pertinent part, "that innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law." 735 ILCS 5/2-702(a) (West 2020). Therefore, "such persons should have an available avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims." *Id.*

¶ 44        We have interpreted subsection (a) as stating the following purpose: "(1) to sweep away technical obstacles, (2) to preclude [COIs] to those petitioners who voluntarily caused or brought about their convictions, and (3) to provide resources and compensation for innocent people wrongly incarcerated." *Washington*, 2023 IL 127952, ¶ 30 (citing 735 ILCS 5/2-702 (West 2016)).

¶ 45        The Survival Act provides, in pertinent part, that, "[i]n addition to the actions which survive by the common law, the following also survive: *** actions to recover damages for an injury to the person." 755 ILCS 5/27-6 (West 2020). Therefore, to answer the question of whether the COI action survives the petitioner's death, we also must answer the following questions: (1) whether a claim under the COI statute is an action to recover damages and (2) whether it is an injury to the person.

¶ 46                         a. Action to Recover Damages

¶ 47        Katrina maintains that the petition for a COI is an action to recover damages. Relying, *inter alia*, on *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 255-57 (2004) (distinguishing "actions seeking damages remedies" from actions seeking injunctive, declaratory, or restitution relief), the State argues that a petition for a COI is not an action to recover damages. We agree with the State.

¶ 48    The Survival Act does not create an independent cause of action; rather, it allows an estate to maintain certain causes of action that accrued before the decedent's passing. *Moon v. Rhode*, 2016 IL 119572, ¶ 38. The Survival Act "is a remedial statute and is liberally construed in order to prevent abatement." *Walter v. Board of Education of Quincy School District No. 172*, 93 Ill. 2d 101, 108 (1982).

¶ 49    In this case, the cause of action was the COI claim. A COI cause of action is initiated by the wrongfully convicted party filing the petition for a COI in the circuit court. The wrongfully convicted party can then use that COI to "obtain relief through a petition in the Court of Claims." 735 ILCS 5/2-702(a) (West 2020). Pursuant to section 8(c) of the Court of Claims Act, that relief is then realized with a claim "against the State for time unjustly served in prison." 705 ILCS 505/8(c) (West 2020).

¶ 50    The General Assembly is vested with "exclusive power to establish the conditions upon which claims against the State may be raised." *Lavery v. Department of Financial & Professional Regulation*, 2025 IL 130033, ¶ 19. It enacted the Court of Claims Act to establish the Court of Claims "as the exclusive forum for litigants to pursue claims against the State." *Township of Jubilee v. State*, 2011 IL 111447, ¶ 22 (citing 705 ILCS 505/8 (West 2008)).

¶ 51    Therefore, the monetary compensation that a wrongfully convicted person would receive is not through the filing of the petition for COI in the circuit court; it is received when a petition is filed against the State in the Court of Claims. Notably, the Court of Claims is not a circuit court as defined by article VI, section 9, of the Illinois Constitution, which governs the judiciary (see Ill. Const. 1970, art. VI, § 9 (circuit courts have original jurisdiction over all justiciable matters)). Instead, it is a separate tribunal from the circuit court, established by statute and part of the legislative branch. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 96-97 (2001).

¶ 52    Receiving a COI after filing a petition in the circuit court is a declaration of a petitioner's innocence and a formal prerequisite to filing a cause of action in the Court of Claims. If, after filing a petition, "the court finds that the petitioner is entitled to a judgment," the circuit court enters (1) "a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated," (2) an order expunging the petitioner's arrest record, (3) an order instructing certain records to be sealed, and (4) an order instructing that the

petitioner's name should be removed from certain circuit court records. 735 ILCS 5/2-702(h) (West 2020). The circuit court clerk will then "transmit a copy of the certificate of innocence to the clerk of the Court of Claims, together with the claimant's current address." *Id.*

¶ 53    The plain language of the COI statute, read in conjunction with the Survival Act and the purpose of the COI statute, reveals that the petition for a COI is not a cause of action to recover damages. Instead, it is a condition precedent to recovering damages. While this court has interpreted one of the purposes of the COI statute to be "to provide resources and compensation for innocent people wrongly incarcerated" (*Washington*, 2023 IL 127952, ¶ 30), the COI itself does not provide the compensation. The COI provides an avenue for the wrongly convicted petitioner to receive compensation. The compensation is received through an award issued by the Court of Claims.

¶ 54    Having determined that a petition for a COI is not an action to recover damages, we decline to reach the question of whether a COI cause of action is an injury to the person. Accordingly, we find that an action for a COI does not survive the death of the petitioner. Therefore, we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court denying Katrina's motion to substitute and dismissing the petition for a COI.

¶ 55                                    III. CONCLUSION

¶ 56    We find that the circuit court did not err when it denied Katrina's motion to substitute and dismissed the petition for a COI. Based on the plain language of the COI statute and reviewing it along with the Survival Act, a petition for COI is not a cause of action to recover damages but is instead a condition precedent to recovering damages in the Court of Claims. Accordingly, we affirm the judgments of the appellate court and the circuit court.

¶ 57    Judgments affirmed.